261 N.J. Super. 43 (1992)
617 A.2d 685
ROBERT RUSSELL, ROBERT D. MILLER, MARY DE FELICE, LESTER MEYERS, LAWRENCE BRITTON AND MARTHA E. GLASGOW, PRO SE, PLAINTIFFS,
v.
STAFFORD TOWNSHIP, STAFFORD TOWNSHIP COMMITTEE AND STAFFORD TOWNSHIP CLERK, DEFENDANT.
EAGLESWOOD TOWNSHIP, PLAINTIFF-INTERVENOR,
v.
STAFFORD TOWNSHIP, DEFENDANT.
Superior Court of New Jersey, Law Division Ocean County.
Decided October 27, 1992.
*44 Robert Russell, Robert D. Miller, Mary De Felice, Lester Meyers, Lawrence Britton, Martha E. Glasgow, Pro Se.
John L. Woodland, Jr., for plaintiff-intervenor (Woodland & McCoy, Attorneys).
Dennis M. Galvin, for defendant (Michael A. Pane, Attorney).

OPINION
SERPENTELLI, A.J.S.C.
This is a case of first impression. It addresses the right of a municipality to deny a petition for annexation filed by property owners in an adjacent municipality, notwithstanding that the *45 adjacent municipality has consented to deannexation. All annexation cases reported to date have reviewed municipal decisions refusing to consent to deannexation as opposed to municipal refusals to consent to annexation.[1]
This dispute involves a section of Cedar Run Dock Road which is located primarily in Stafford Township [hereinafter Stafford] but terminates in Eagleswood Township [hereinafter Eagleswood] at Little Egg Harbor Bay. Cedar Run Dock Road is approximately three and a half miles in length, the last half mile of which is in Eagleswood. The pro se plaintiffs reside in Eagleswood in the Cedar Run Dock Road neighborhood.
On August 2, 1991, those plaintiffs presented a petition to the Eagleswood Township Committee seeking to deannex the Eagleswood area of Cedar Run Dock Road and to annex it to Stafford. Pursuant to N.J.S.A. 40A:7-12, the petition was referred to the Eagleswood Township Planning Board for its review of the impact upon the municipality. Following receipt of the planning board report, the Eagleswood governing body adopted a resolution approving the annexation.
On August 20, 1991, the Stafford Township Council adopted an ordinance on first reading consenting to the annexation. The ordinance was considered on second reading on September 3, 1991. After heated public debate, the council voted to deny the petition for annexation. This appeal followed.
Disposition of this controversy requires an analysis of the development of our case law concerning deannexation and the legislative response to those decisions. For many years prior to the opinion of the Supreme Court in West Point Island Civic Ass'n v. Committee of Dover Tp., 54 N.J. 339, 255 A.2d 237 (1969), there was no reported litigation concerning efforts to *46 change boundary lines through deannexation. Perhaps that resulted from the view that municipalities had a broad discretionary right to deny a request for deannexation. That right was deemed to be purely legislative or political in nature and, absent extraordinary circumstances, not judicially reviewable. The Supreme Court in West Point Island dispelled that notion and established guidelines for municipalities faced with deannexation requests.
In West Point Island, the Court stressed that discretionary activities of municipal governing bodies traditionally have been subjected to judicial scrutiny in an effort to prevent arbitrary and unreasonable decisions. Action on a petition for deannexation was found to be a discretionary function. In interpreting N.J.S.A. 40:43-26, a predecessor of the present statute, the Court held that once a petition seeking deannexation has been presented, the objecting municipality "must come forward with reasons why such deannexation would be injurious to [its] social and economic well-being...." Id. at 348, 255 A.2d 237. If the municipality is unable to demonstrate such injury, it should approve the request. Refusal to consent to deannexation would be subject to judicial review since an abuse of the delegated discretion would undermine the statutory scheme. Id. at 347, 255 A.2d 237.
In Ryan v. Borough of Demarest, 64 N.J. 593, 319 A.2d 442 (1974), the Court clarified the standards governing the deannexing municipality's exercise of discretion as enunciated in West Point Island:
Proof of either economic or social injury, substantial in nature, is sufficient to satisfy the municipality's burden of coming forward with the evidence and there need not be a showing of both. It is likewise conceivable that there be both economic and social detriment, neither of which standing alone would be considered `substantial' but the total of which taken together would work a substantial injury on the community were deannexation allowed. Id. at 602, 319 A.2d 442.
Furthermore, the Court placed the burden of initially proving the unreasonableness of the requested deannexation on the municipality:

*47 [W]hen the case reaches the trial stage, it is sufficient in the first instance for plaintiffs simply to introduce into evidence the petition by which they seek deannexation, together with evidence of the municipality's denial of consent. While we have held that plaintiffs have the burden of proving the arbitrary and unreasonable quality of the governing body's action, we are sensitive to the problem they face in proving what is essentially a negative, i.e., that deannexation will not result in social or economic harm. Therefore, the trial court here was correct in denying Demarest's motion for judgment at the end of plaintiffs' case, their proof of a petition and withholding of consent being sufficient to shift to the municipality the burden of coming forward with evidence to which it clearly had a superior means of access. Id. at 604-05, 319 A.2d 442; [emphasis added].
In Carton v. Borough of Tinton Falls, 177 N.J. Super. 404, 426 A.2d 1056 (App.Div. 1981), the court followed both West Point Island and Ryan by squarely placing the burden of proof of social or economic injury on the municipality once a request for deannexation has been made and denied. Id. at 411-12, 426 A.2d 1056. Of course, the ultimate burden of proving that the municipality acted arbitrarily or unreasonably remains with the plaintiff. Ryan v. Borough of Demarest, 64 N.J. at 602, 319 A.2d 442.
It is important to recognize that these three cases were decided prior to the enactment of the present statutory scheme. West Point Island and Ryan involved an interpretation of N.J.S.A. 40:43-26. Carton was decided after N.J.S.A. 40:43-26 had been repealed and replaced by N.J.S.A. 40A:7-12 and 13. However, the Carton court stated that the new enactments made only minor changes which were not significant to the issues on appeal. The major changes related to procedural issues not involved in that case or in the case before this court.
In 1982, the Legislature substantially altered the common law governing annexation by adopting N.J.S.A. 40A:7-12.1. That section provides:
In any judicial review of the refusal of the governing body of the municipality in which the land is located or the governing body of the municipality to which annexation is sought to consent to the annexation, the petitioners have the burden of establishing that the refusal to consent to the petition was arbitrary or unreasonable, that refusal to consent to the annexation is detrimental to the economic and social well-being of a majority of the residents of the affected *48 land, and that the annexation will not cause a significant injury to the well-being of the municipality in which the land is located.
Thus, for the first time, the Legislature statutorily defined the burden of proof and consequently the scope of judicial review affecting the deannexing municipality, the annexing municipality and the affected land. The statute directs that the petitioners must establish three elements:
1. that the refusal to consent to the petition to deannex or annex was arbitrary or unreasonable;
2. that refusal to consent to the annexation is detrimental to the economic and social well-being of a majority of the residents of the affected land;
3. that the annexation will not cause a significant injury to the well-being of the municipality in which the land is located.
Clearly, the first element is consistent with our case law as it relates to the deannexing municipality. Similarly, the refusal of the annexing municipality to consent to annexation should be subject to judicial review to determine if it is arbitrary or unreasonable. As the Court said in West Point Island:
Since an abuse of delegated discretion would undermine the statutory deannexation scheme, the court must have the power to review these kinds of municipal decisions and correct abuses by an action in lieu of prerogative writs. 54 N.J. at 347, 255 A.2d 237.
Also, it is to be observed that N.J.S.A. 40A:7-13 provides that "[t]he governing body of the municipality to which the land is sought to be annexed, may, in its discretion, by ordinance adopted by a two-thirds vote annex the land...." [emphasis added]. In enacting N.J.S.A. 40A:7-12.1, the Legislature is presumed to have been aware of the provisions of N.J.S.A. 40A:7-13. Mahwah Tp. v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818 (1985); Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969). Therefore, the first element merely expresses the standard for the exercise of discretion afforded to an annexing municipality under N.J.S.A. 40A:7-13 and both the annexing and deannexing municipalities under common law. It makes the exercise of that discretion subject to review under the standard principles of arbitrariness or unreasonableness. The second and third elements of N.J.S.A. 40A:7-12.1 are much more troublesome.
*49 The second element requires the petitioners to demonstrate that refusal to consent to the annexation is detrimental to a majority of the residents of the "affected land". The term "affected land" is not defined in N.J.S.A. 40A:7-12.1 or used elsewhere in the statute. The other statutory references are to "the municipality in which the land is located" or "the municipality to which annexation is sought". Each statutory term imposes a different burden of proof on the petitioner. As to the deannexing or annexing municipality, the first element requires the plaintiff to show an abuse of discretion in refusing to consent to the petition. As to the deannexing municipality, the third element mandates proof that there will be no significant injury to the well-being of the town in which the affected lands are located. The second element requires the petitioners to demonstrate that refusal to consent to annexation of the affected land is detrimental to them. Thus, the term "affected land" could not be taken to apply to either Stafford or Eagleswood, but only to the residents of the Cedar Run Dock Road section of Eagleswood.
The court interprets the second element to require the petitioners to show that deannexation will be beneficial to a majority of the residents of the land being deannexed. That imposes a new burden on the petitioners which is not found in prior case law and which seems incongruous since N.J.S.A. 40A:7-12 requires that 60% of them sign a document requesting the annexation. Prior to the enactment of N.J.S.A. 40A:7-12.1, that burden was satisfied merely by placing the petition in evidence.
Similarly, the Legislature appears to have reversed the burden of proof as to the third element. The petitioners must show that annexation will not cause a significant injury to the well-being of the deannexing municipality rather than the initial burden being upon the deannexing municipality to prove that it will be injured. West Point Island and its progeny are clearly to the contrary. Of course, in this case, the issue is moot since Eagleswood has consented to the deannexation.
*50 Elements two and three may find their genesis in Justice Pashman's concurring and dissenting opinion in Ryan. There, he said:
It is not appropriate, however, to speak of the introduction into evidence of the petition for deannexation together with resolution of denial of consent as constituting a prima facie case sufficient to require the township to `come forward with proof' of specific economic and/or social harm that would result from deannexation.... It must always fall, therefore, to the potential secessionist to prove that in fact the economic or social consequences of deannexation will be de minimis.

....
I would affirm the principle stated in West Point Island, that the reasonableness of municipal action is at issue in these cases. I do not believe that the plaintiffs should be confined, as the majority suggests, to an attempt to negative proof of economic and social injury, a task in which they can never succeed. Instead, the plaintiffs should prove that the extent of potential harm to the parent municipality is insignificant, or alternatively, that actual harm to the township is so far outweighed by the beneficent results to the secessionist sector, that refusal of consent was palpably unreasonable.

This burden on the plaintiffs is a heavy one. Ryan, 64 N.J. at 607, 319 A.2d 442 [emphasis added].
While the Legislature did not expressly incorporate the test as stated by Justice Pashman, it appears to have imposed a heavier burden on the petitioners, thereby making deannexation more difficult or, perhaps, discouraging attempts to undertake the effort at all. With this analysis of the case law and statutory enactments, the court can now address the matter before it.
The Cedar Run Dock Road section of Eagleswood is an area lying at the northeastern most corner of the township.[2] There are approximately twenty-three improved properties in the affected area. Much of the land is unbuildable due to the existence of wetlands and a national wildlife refuge. It is presently accessible from Eagleswood only by traveling approximately three miles through Stafford on Cedar Run Dock Road. The construction of a road directly from the other portions of Eagleswood to the area involved is not feasible since it is *51 unlikely that permission would be obtained due to numerous governmental restrictions on construction within an environmentally sensitive area.
Eagleswood is a rural community, about 16 square miles, most of which is primarily wetlands and pinelands. There are approximately 1,500 year-round residents and 1,100 parcels of land, 460 to 500 of which are improved. There is a very small commercial area.
Stafford, on the other hand, is a rapidly developing community with a population of approximately 13,000 within its 47 square miles. Much of the township remains undeveloped. Its Mayor testified that there are many remote clusters of development within the township similar to the Cedar Run Dock Road section of Eagleswood. It has a prospering commercial town center located in the general vicinity of the intersection of State Highways 72 and 9. Route 72 is accessible to and from the Garden State Parkway.
The plaintiffs enumerate several reasons supporting their contention that Stafford should consent to annexation. First, and concededly the motivating force behind the annexation effort, is the need to bring municipal sewer service to the Cedar Run Dock Road portion of Eagleswood. The plaintiffs argue that Stafford was required by the New Jersey Department of Environmental Protection and Energy to extend its present municipal sewer service for the full length of Cedar Run Dock Road within Stafford. The plaintiffs maintain that it would be relatively simple and cost effective for Stafford to continue that line to the end of Cedar Run Dock Road in Eagleswood.
Second, the petitioners assert that other municipal services could be better provided by Stafford. Currently, police protection is supplied primarily by the New Jersey State Police from its Tuckerton barracks located approximately 4.8 miles from the area. Eagleswood has a part-time police department which only responds to natural emergencies. The plaintiffs allege that response and frequency of observation by the State Police *52 is unsatisfactory. Even though the Stafford Police headquarters is approximately 4 miles away, its full-time police force regularly patrols Cedar Run Dock Road to the township boundary line.
Similarly, the petitioners also contend that there are first aid and fire protection benefits which would accrue from annexation. First aid services are supplied through a cooperative agreement between Eagleswood and the Tuckerton First Aid Squad whose building is located approximately 9.1 miles from the Cedar Run Dock Road residents in Eagleswood. The Stafford First Aid Station is about 3.8 miles distant. Thus, the plaintiffs argue that the need to travel from Tuckerton through Eagleswood and Stafford to the Cedar Run Dock Road section could cause unreasonable delays for first aid services. For fire protection, the Cedar Run Dock inhabitants rely upon the Eagleswood Volunteer Fire Company which is located approximately 6.2 miles from the Cedar Run Dock section. The Stafford Firehouse is approximately 3.8 miles from the area.
Garbage collection would be a simple matter for Stafford since its trucks now service the entire length of Cedar Run Dock Road to the Stafford line and, in fact, have to travel into Eagleswood to turn around. Since they already enter Eagleswood, they could easily service the twenty-three improved properties as part of a normal route. Presently, Eagleswood's garbage trucks must travel the entire length of Cedar Run Dock Road through Stafford in order to collect trash in the Cedar Run Dock Road section. Additionally, while there are currently no school age children in that area, if any were to reside there, that would require Eagleswood to send the school buses through Stafford to the Cedar Run Dock Road section to pick up and redeliver the children. Other municipal services provided at the Eagleswood municipal building are also remote to the Cedar Run Dock area since that building is located approximately six miles distant while Stafford's municipal building is about four miles away.
*53 Stafford does not dispute many of the geographic facts or service issues raised by the plaintiffs. It justifies its decision on other grounds. First, it charges that Eagleswood is imposing a financial problem on Stafford which Eagleswood should shoulder. Second, Stafford disputes the plaintiffs' allegation that the isolation of the Cedar Run Dock Road area is a compelling reason to justify annexation. The defendant claims that this region is isolated in any event from either Eagleswood or Stafford and that existing environmental constraints will preclude additional development along Cedar Run Dock Road in Stafford which might reduce the remoteness. Third, Stafford contends that there are many other isolated localities in its community which will require service in the future at the expense of the Stafford taxpayers and rate payers. Lastly, while Stafford admits that it is a regional hub for commercial purposes, it denies that the social life of the people in this section is tied to Stafford.
It is clear that financial considerations are at the heart of this controversy. While the plaintiffs attempt to justify the annexation on other grounds, the record supports the conclusion that the mandated installation of a sewer system in the Cedar Run Dock Road section provided the impetus for the present action. In fact, the impact report prepared by the Eagleswood Township Planning Board expressly found that the primary purpose of the deannexation was to facilitate the development of a single sanitary sewer system for the area.
Eagleswood's Mayor testified that the Stafford Municipal Utilities Authority agreed to install public sewers in the Cedar Run Dock Road section of Eagleswood at a cost of approximately $660,000. Presently, there are about 189 sewer hookups in Eagleswood maintained by the municipality, not by an authority. The system was constructed in a manner which did not envision any future growth. The Mayor testified that three options were considered to implement the required sewer installation. The first contemplated assessing the entire $660,000 to all users of the sewer system. The effect would be to quadruple *54 the present approximate rate of $254 per user. The second option involved levying a special assessment of $1,500 to $2,000 on all users of the system and bonding the balance of the cost over a prolonged period. The Mayor indicated that this approach would result in only a doubling of the present rate. The third alternative considered was a direct assessment to the users in the Cedar Run Dock Road section only. They would have to absorb approximately $30,000 per improved lot. The Mayor concluded that all three approaches would impose unreasonable financial burdens.
The Mayor's testimony regarding financing costs differed somewhat from Eagleswood's engineer. The engineer testified that the estimated cost of $660,000, if amortized over twenty years at 7%, would total $1.2 million dollars. If all of the users in Eagleswood were billed, they would have to pay $292 a year for twenty years in addition to their present annual charge, which he said was $352, for a total of $644 a year, or a doubling of the current rate. As noted, the Mayor testified that the present rate would be quadrupled, resulting in a user charge of over a $1,000 per year. Additionally, the engineer said that if Eagleswood could not bond for the improvement, it would have to assess each residence in the Cedar Run Dock Road area approximately $28,000. If it could be bonded, they would have to pay $2,700 per year for twenty years or over $50,000. The engineer stated that if the $660,000 cost for the Cedar Dock section of Eagleswood was absorbed by the users of the Stafford Municipal Utilities Authority, as part of the annexation, an annual rate increase of $8 would result. However, he conceded that his calculation of the rate increase did not include additional rate charges which the Stafford users would incur from the cost of sewer installation for the portion of Cedar Run Dock Road in Stafford. Unfortunately, that figure was not quantified in the testimony.
Stafford's Mayor acknowledged that his township would experience a net tax gain through annexation. He provided rough estimates of tax revenues of $46,000 and expenditures to *55 service the Cedar Run Dock Road area of Eagleswood of $12,000, resulting in a net revenue of $36,000. Notwithstanding that fact, the Stafford governing body found that the annexation would have a negative impact on the municipality for several reasons. First, the municipal budget was under pressure because of growing costs and static revenues. Second, the municipal tax rate had doubled for the current tax year and the taxpayers should not be required to assume any additional financial burdens. Third, Stafford has many remote areas for which the governing body has to anticipate future development costs. Last, and at the crux of the argument, the people of Stafford simply do not want to pay the capital cost of the Eagleswood improvements.
Stafford stresses that installation of the sewer facilities could have been accomplished without resort to an annexation petition if Eagleswood had made an effort to pursue negotiations for an interlocal service agreement pursuant to N.J.S.A. 40:8A-1 et seq., or a contract with the sewer authority under N.J.S.A. 40:14B-49. Stafford argues that Eagleswood's refusal to consider such agreements and the petitioners insistence on annexation constitutes nothing more than an effort at avoidance of assessments. That conduct was specifically condemned by the Supreme Court in Ryan v. Borough of Demarest, where the Court said:
We find in the statute an intention on the part of the Legislature to give precedence to a more significant policy, that of preservation of municipal boundaries and maintenance of their integrity against challenge prompted by short-term or even frivolous considerations such as `tax shopping' or avoidance of assessments. It is exactly for this reason that there must be secured the governing body's consent, which may be withheld in the reasonable exercise of its discretion. That safeguard stands in support of the intended policy of the legislature. [64 N.J. at 606, 319 A.2d 442].
As discussed, under N.J.S.A. 40A:7-12.1, the plaintiffs must carry the burden of proof on three issues. First, they must demonstrate that Stafford's refusal to consent to annexation was arbitrary or unreasonable. Second, they must show that refusal to consent to deannexation would be detrimental to the *56 economic and social well-being of the residents of the Cedar Run Dock area of Eagleswood. Finally, they must demonstrate that the deannexation will not cause a significant injury to the well-being of Eagleswood.
Clearly, the plaintiffs have proven the second and third components. It is evident that annexation would be beneficial to residents of the affected land. Furthermore, Eagleswood has already consented to the deannexation, thereby acknowledging no significant injury to it.
The pivotal issue is Stafford's reasonableness in declining to accept the secessionists. Although there is no reported opinion which considers a refusal of a municipality to accept annexation, logic dictates that some of the factors relevant in reviewing a denial of deannexation should be pertinent in a review of a denial of annexation.
In that regard, the West Point Island and Ryan decisions are instructive. In West Point Island, the Court found in approving deannexation that all municipal services were either already provided by the municipality to which the petitioner sought annexation or could easily be supplied. The same can be said about the case before the court. The Stafford Police Department currently patrols Cedar Run Dock Road to its Stafford Township border. Garbage collection and school transportation must also be provided to the township line. Additionally, the Stafford Township first aid and fire protection are much more readily available to the Cedar Run Dock Road section of Eagleswood than are the same services in Eagleswood. Government services at the Stafford municipal building would also be more accessible.
The Court in West Point Island also found that deannexation would not appreciably alter the character of Dover Township as a community since West Point Island was isolated from Dover Township schools, government offices and businesses. There is a dispute about isolation in this case. While it is true that the affected area is remote from both municipalities, it is also clear *57 that the Eagleswood residents have a greater nexus with the business and shopping areas of Stafford. Additionally, the proofs demonstrate that access to these areas at the present time, and in the foreseeable future, will have to be through Stafford. Thus, in balance, the geography, logistics and availability of businesses and municipal services seem to favor annexation of the Cedar Run Dock Road section to Stafford Township. Cf. Ryan v. Borough of Demarest, 64 N.J. at 603, 319 A.2d 442. Nonetheless, Stafford had the right to factor in other issues in deciding whether to consent to the petition.
The township committee primarily focused on the financial considerations. On the one hand, Stafford will realize an increase in tax revenues as a result of the annexation. On the other hand, Stafford's municipal utilities authority could experience a small increase in its sewer charges by virtue of including the twenty-three properties in the Cedar Run Dock Road area of Eagleswood in the Stafford municipal utilities system.
At first blush, it appears that Stafford has little reason to deny the annexation solely on the basis of an $8 yearly rate increase. The result for Eagleswood is harsh whereas the financial impact on Stafford appears relatively insignificant. However, Stafford is not obligated in its analysis of the annexation petition to consider only the needs of the Cedar Run Dock Road residents or the welfare of Eagleswood residents as a whole. The township committee, as representatives of the residents of Stafford, had to reach a result which was in the best interest of its community. Therefore, it had the right to determine whether there were any substantial advantages to Stafford in the annexation proposal. In that regard, some of the township committee members stressed that while the additional sewer charge was not in and of itself very significant, it had to be measured in the context of the anticipated cost involved in the construction of the Cedar Run Dock Road sewer work in Stafford as well as the future expansion costs of the sewer system to other outlying areas of Stafford.
*58 While the court would have preferred to have the committee member's thought process better elucidated,[3] the record supports an inference that the majority was persuaded by the likelihood that the sewer rates would increase in the future and that the tax revenue increase resulting from the Cedar Run Dock Road section offered no meaningful offsetting benefits. Furthermore, the governing body was cognizant of the increasing costs of municipal services and the likely need to increase taxes. The committee could rationally have found the additional tax revenues to be insignificant, since net revenues of $36,000 annually applied against the cost of doing business for a township of 13,000 people can hardly be deemed a major incentive.
Thus, from a financial standpoint, this case is unlike West Point Island. There, the Supreme Court found that the deannexation had an insignificant effect upon the community losing ratables in light of offsetting deductions in the cost of municipal services. This court cannot find that there is any real financial benefit to Stafford. In fact, the court believes that Stafford could reasonably conclude that the proposal was nothing more than a request to have it assume Eagleswood's headache, a significant sewer assessment. In Ryan v. Borough of Demarest, 64 N.J. at 606, 319 A.2d 442, the Court found a legislative intent behind N.J.S.A. 40:43-26, a predecessor to N.J.S.A. 40A:7-12.1, to give precedence to the preservation of municipal boundaries and integrity against challenges "prompted by ... `tax shopping' or avoidance of assessments." That policy is still evident today after the enactment of N.J.S.A. 40A:7-12.1 which not only supplemented prior law but also apparently reinforced the scope of municipal discretion.
*59 In addition to its financial concerns, Stafford could also logically conclude that there were no other substantial advantages accruing from annexation. For instance, the plaintiffs claim that Stafford will benefit from having a county park and a dock at the end of Cedar Run Dock Road become a part of Stafford. In reality, the area is available to Stafford residents without the existing policing problems, which would become Stafford's responsibility through annexation.
Furthermore, the record is replete with suggestions that Stafford has enough problems without having to help out its neighboring community. Nonetheless, Stafford did not ignore the plight of the residents of the Cedar Run Dock section of Eagleswood. Both in the hearings before the governing body and in the testimony before this court, Stafford has repeatedly expressed a willingness to negotiate inter-municipal agreements to provide needed services to Eagleswood. Obviously, any resulting contract may not be nearly as cost beneficial to the Eagleswood residents of Cedar Run Dock Road as would emanate from an annexation. But the annexation process is a two-way street. Judicial review cannot be confined to the welfare of the petitioners. The interests of Stafford are entitled to at least equal consideration.
While the case is not decided on this issue, some may argue that a municipality being asked to accept new territory through annexation should have the right simply to say no. After all, why should a municipality have lands forced upon it which it does not want, whatever the reason? Proponents of this argument could rely upon the Supreme Court's inquiry in both West Point Island and Ryan concerning the intention of the chosen municipality to annex the land should deannexation be ordered. West Point Island, 54 N.J. at 343, fn. 2, 255 A.2d 237; Ryan, 64 N.J. at 597, fn. 1, 319 A.2d 442. It might be inferred that if the Court had been advised that the municipality objected to the annexation, the Court may have refused to order deannexation.
*60 However, that argument contradicts the express language of the statutory law and the common law discussed earlier. N.J.S.A. 40A:7-12.1 expressly provides for judicial review of a denial of annexation. N.J.S.A. 40A:7-13 allows a municipality, "in its discretion", to adopt an ordinance to annex. However, our courts have determined that the exercise of that discretion is subject to judicial review under traditional concepts of reasonableness. That determination was made even before it was embodied in N.J.S.A. 40A:7-12.1.
On the other hand, a strong argument can be made that the annexing municipality has greater latitude in the exercise of its discretion to the extent that it may consider factors which a deannexing municipality may not address in its evaluation of the petition. For example, the annexing municipality may consider such factors as the extent and nature of the past interaction between the residents of the affected lands and the annexing municipality, potential undesirable growth, the weakening of "small town bonds" and the desirability of maintaining the integrity of existing municipal boundaries. Furthermore, in the right case, there may be other intangible factors which the governing body could properly address and to which the court should give deference. Certainly, in zoning and planning matters, the court is required to give deference to the board members' peculiar knowledge of local conditions. Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). There is no reason why the same rule should not apply to governing body members who, in the setting of an annexation case, are best equipped to evaluate the local impact and must be acutely sensitive to the needs of their residents. Of course, the reasons for the refusal to annex should be detailed in the resolution of denial. Here, the effect which annexation might have on Stafford beyond financial implications unfortunately was not spelled out in the record.
Finally, in reviewing the decision of the Stafford Township Committee, the court must keep in mind the well established *61 presumption of validity accorded to municipal actions. Ward v. Montgomery Tp., 28 N.J. 529, 539, 147 A.2d 248 (1959); Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 447, 416 A.2d 840 (1980). The law presumes that municipal governing bodies will act fairly, with proper motives and for valid reasons. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296, 212 A.2d 153 (1965). The presumption extends to all municipal enactments and may only be overcome by a showing of arbitrariness or unreasonableness. Dock Watch Hollow Quarry Pit v. Warren Tp., 142 N.J. Super. 103, 116, 361 A.2d 12 (App.Div. 1976), aff'd, 74 N.J. 312, 377 A.2d 1201 (1977); Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543, 564, 350 A.2d 1 (1975); Riggs v. Long Beach Tp., 109 N.J. 601, 611, 538 A.2d 808 (1988). The party attacking the decision has the burden of rebutting the presumption. Id. Furthermore, judicial review of municipal action is narrow in scope. As the Kramer Court said, "[e]ven when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97, 212 A.2d 153.
In light of the court's finding that the Stafford Township Committee reasonably exercised its discretion in concluding that the annexation was not in the interest of the residents of its community and given the presumption of validity accorded that judgment, the court sustains that decision and dismisses plaintiffs' complaint.
*62 
NOTES
[1] Reference to the term "deannexation" in this opinion applies to the municipality in which the land is located (i.e., Eagleswood Township). Reference to the term "annexation" applies to the municipality to which the land is sought to be joined (i.e., Stafford Township).
[2] Attached to this opinion is a map depicting the area in controversy.
[3] Cf. Ryan v. Borough of Demarest, 64 N.J. at 604, 319 A.2d 442. A resolution expressing denial of consent should consist of "those facts supportive of the governing body's conclusion that social and economic detriment will result from deannexation."