SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

 **Donald Whiteman v. Township Council of Berkeley Township** (A-40-24) (089641)

**Argued April 29, 2025 -- Decided July 10, 2025**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers a petition filed by residents of South Seaside Park to deannex their barrier island community from the Township of Berkeley and to annex it to the Borough of Seaside Park, an adjoining municipality.

To reach the mainland section of the Township, a resident of South Seaside Park must drive between 13 and 16 miles across 7 other municipalities. South Seaside Park's municipal facilities consist of a basketball court and White Sands Beach, a public beach with restrooms and a water fountain. The Township provides emergency and police patrol services to South Seaside Park. South Seaside Park shares a border and a zip code with the municipality it seeks to join, Seaside Park. Plaintiffs presented evidence that South Seaside Park residents rely more on Seaside Park than the Township for emergency services and engage more with the residents and businesses of Seaside Park than with the Township's mainland community.

In September 2014, plaintiffs submitted to the Township Council a petition "seeking annexation by Seaside Park Borough and deannexation from Berkeley Township." Beginning in January 2015, and ending in February 2019, the Planning Board conducted thirty-eight hearings.

The Planning Board retained a professional planner who did not impartially analyze the evidence as N.J.S.A. 40A:7-12 envisions, but instead worked with the Township on its strategy for opposing deannexation and participated in the preparation of the Township's witnesses for their testimony before the Board. In addition, one Planning Board member is alleged to have publicly opposed plaintiffs' petition while the matter was pending, telling a group of senior citizens that they should "start going to the meetings, because if South Seaside Park becomes Seaside Park, your taxes are going to go up," while another Board member allegedly disparaged plaintiffs' deannexation effort as "an elitist section moving."

During the hearings, plaintiffs presented the expert opinion of a professional planner, who testified that the Township had provided deficient services to South

1

Seaside Park residents and had otherwise disregarded their needs. The planner opined that approval of the proposed deannexation would benefit the majority of South Seaside Park residents; that refusal to allow deannexation would be detrimental to the economic and social well-being of a majority of South Seaside Park residents; that deannexation would not cause a significant injury to the economic and social well-being of the Township; and that deannexation would not have a detrimental negative impact on the Township's master plan, zone plan, affordable housing plan, or 2020 Vision Statement. Plaintiffs' financial expert witness explained that the Township's loss of taxes through deannexation would be offset, in part or in whole, by the Township's savings on police services.

The Township's expert witness on planning disputed the contention that the Township would suffer no harm if South Seaside Park were deannexed, and its Chief Financial Officer and Treasurer opined that deannexation would give rise to a tax increase of $147.63 for the average single-family home in the Township. In rebuttal, plaintiffs presented the testimony of a second professional planner, who testified that deannexation of South Seaside Park would not harm the Township, but that South Seaside Park's residents would be harmed if deannexation were denied.

In August 2020, the Planning Board adopted a resolution recommending that the Township should deny the petition. By resolution dated September 21, 2020, the Township Council denied the petition, "relying on the well-supported findings" stated by the Planning Board in its resolution.

Plaintiffs filed this action, seeking judicial review of the Council's denial of their petition. The trial court found that plaintiffs had met their burden of proof with respect to all three of N.J.S.A. 40A:7-12.1's deannexation factors. The Appellate Division affirmed. The Court granted certification. 260 N.J. 125 (2025).

**HELD:** The Court views N.J.S.A. 40A:7-12 to require a planning board to independently evaluate the merits of a deannexation petition and make an objective recommendation to the municipality's governing body. That did not occur in this case. Plaintiffs met their burden of proof with respect to all three prongs of N.J.S.A. 40A:7-12.1, and the trial court properly ordered deannexation.

1. The Court reviews the history of the statutes governing deannexation. N.J.S.A. 40A:7-12 prescribes requirements and procedures for petitions for deannexation, and N.J.S.A. 40A:7-12.1 provides that, to challenge the denial of a petition, "the petitioners have the burden of establishing [1] that the refusal to consent to the petition was arbitrary or unreasonable, [2] that refusal to consent to the annexation is detrimental to the economic and social well-being of a majority of the residents of the affected land, and [3] that the annexation will not cause a significant injury to the well-being of the municipality in which the land is located." (pp. 17-21)

2

2.  Case law explains each of N.J.S.A. 40A:7-12.1's three prongs, as the Court reviews in detail.  If a court determines that the petitioners have met their burden of proof as to all three prongs of that statutory test, it orders the municipality to grant deannexation in accordance with N.J.S.A. 40A:7-12.  (pp. 21-28)

3.  In any proceeding before it, the Planning Board must conduct itself fairly and impartially.  Here, the Planning Board did not act in accordance with that standard.  The trial court's factual findings regarding the first prong of N.J.S.A. 40A:7-12.1 were supported by competent, relevant and reasonably credible evidence in the record, and plaintiffs met their burden with respect to that factor in the statutory test.  (pp. 29-31)

4.  As to the second factor, the Township does not appear to contest the findings of the trial court and the Appellate Division that the denial of plaintiffs' petition would be "detrimental to the economic and social well-being" of a majority of South Seaside Park's residents.  Both courts' findings are substantially premised on the most compelling factors in plaintiffs' favor:  the geographic distance between South Seaside Park and the Township's mainland section and the time and effort required for residents to traverse seven municipalities and reach the mainland, where virtually all municipal facilities are located.  The Court concurs that plaintiffs met their burden with respect to N.J.S.A. 40A:7-12.1's second prong.  (pp. 31-32)

5.  Finally, with regard to N.J.S.A. 40A:7-12.1's third prong, the evidence presented to the Board supports the conclusion that any economic loss to the Township through lost tax revenue would be offset to some degree by cost savings, and that deannexation would not cause substantial economic harm to the Township.  The record also supports the findings that the deannexation of South Seaside Park would not cause significant social harm to the Township's remaining residents, given the limited contact between South Seaside Park residents and their counterparts in the Township's mainland section, and that the loss of White Sands Beach -- only 5.4% of the Township's 28 miles of shoreline -- would have a minimal impact on the Township.  Plaintiffs have thus proved that the proposed deannexation would not cause a significant injury to the Township's well-being.  (pp. 33-35)

6.  Plaintiffs have satisfied their burden of proof as to all three prongs of N.J.S.A. 40A:7-12.1, and the trial court properly ordered deannexation.  (p. 35)

    **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-40 September Term 2024
089641

Donald Whiteman,
Patricia A. Dolobacs,
Judith A. Erdman, and
282 Other Petition Signers
of South Seaside Park
Homeowners & Voters
Association,

Plaintiffs-Respondents,

v.

Township Council of
Berkeley Township and
Township of Berkeley,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| April 29, 2025 | July 10, 2025 |

Gregory P. McGuckin argued the cause for appellants (Dasti, McGuckin, McNichols, Connors, Anthony & Buckley, attorneys; Gregory P. McGuckin, of counsel and on the briefs, and Kelsey A. McGuckin-Anthony, on the briefs).

Joseph Michelini argued the cause for respondents (O'Malley, Surman, & Michelini, attorneys; Joseph Michelini, on the brief).

1

In this appeal, we consider a petition filed by residents of South Seaside Park to deannex their barrier island community from the Township of Berkeley -- two miles away across Barnegat Bay -- and to annex it to the Borough of Seaside Park, an adjoining municipality.

Under New Jersey's municipal annexation statute, "[l]and in one municipality may be annexed to another municipality to which said land is contiguous." N.J.S.A. 40A:7-12. Residents seeking to deannex their land from a municipality may present to the municipality's governing body a petition seeking deannexation, signed by at least sixty percent of the legal voters residing there. Ibid. The municipality's planning board is charged to consider the evidence and "report to the governing body on the impact" that deannexation would have on the municipality. Ibid. By a two-thirds vote of the full membership of the governing body, the municipality may consent to deannexation. Ibid.

If the governing body declines to consent to the petition for annexation, the petitioners may seek judicial review. Id. at -12.1. In that proceeding, the petitioners have the burden of proof as to the statute's three requirements: that the municipality's "refusal to consent . . . was arbitrary or unreasonable"; that

the refusal "is detrimental to the economic and social well-being of a majority of the residents of the affected land"; and that annexation to the new municipality "will not cause a significant injury to the well-being of the municipality in which the land is located." Ibid.

Here, after South Seaside Park's petition was referred to the Township's Planning Board, the Board retained a professional planner who did not impartially analyze the evidence as the statute envisions, but instead worked with the Township on its strategy for opposing deannexation and participated in the preparation of the Township's witnesses for their testimony before the Board. In addition, plaintiffs presented evidence that two Board members made comments opposing the petition while the matter was pending before the Board. After thirty-eight hearings conducted over four years, the Board issued a report recommending that the Township Council deny the petition for deannexation, and the Council passed a resolution denying the petition.

Plaintiffs filed this action, seeking judicial review of the Council's denial of their petition. The trial court found that plaintiffs had met their burden of proof with respect to all three of N.J.S.A. 40A:7-12.1's deannexation factors. The Appellate Division affirmed the trial court's judgment, concluding that the trial court's factual findings were supported by

credible evidence in the record and concurring with the trial court's application of N.J.S.A. 40A:7-12.1 to the evidence in the record.

We granted certification and now affirm the Appellate Division's judgment. We view N.J.S.A. 40A:7-12 to require a planning board to independently evaluate the merits of a deannexation petition and make an objective recommendation to the municipality's governing body. That did not occur in this case. We agree with the trial court and Appellate Division that plaintiffs met their burden of proof with respect to all three prongs of N.J.S.A. 40A:7-12.1, and that the trial court properly ordered deannexation.

I.

A.

The Township is an Ocean County municipality spanning approximately 55.8 square miles -- 42.9 square miles of land and 12.9 square miles of water.[1] According to the 2010 United States Census, it had approximately 41,255 year-round residents. The Township consists of the "mainland" section west of Barnegat Bay and two barrier island sections east of Barnegat Bay -- South Seaside Park and Pelican Island.

---

[1] The Township was incorporated by the Legislature in 1875 after deannexing from Dover Township, now the Township of Toms River. Over the next six decades, seven sections of the Township were deannexed to form new municipalities. One of those municipalities is Seaside Park.

South Seaside Park has approximately 490 year-round residents, who represent less than two percent of the Township's population. It includes about 1,400 residential and commercial properties.

To reach the mainland section of the Township, a resident of South Seaside Park must drive between thirteen and sixteen miles across seven other municipalities. In the off-season, that trip can take a half hour, and during the summer, it can take forty-five minutes or more.

The Township's municipal buildings and the vast majority of its recreational facilities, parks, and historic sites are located on the mainland. Because the mainland and South Seaside Park are served by different cable providers, broadcasts of the Township's municipal meetings are not available to the residents of South Seaside Park.

South Seaside Park's municipal facilities consist of a basketball court and White Sands Beach, a public beach with restrooms and a water fountain. The Township provides emergency services to South Seaside Park; Township officers, using two police vehicles assigned to South Seaside Park, patrol the community. The Township also hires auxiliary officers to assist the police department during the summer.

South Seaside Park shares a border and a zip code with the municipality it seeks to join, Seaside Park. Plaintiffs presented evidence that because of the

5

distance between their homes and the mainland portion of the Township, South Seaside Park residents rely more on Seaside Park than the Township for emergency services and engage more with the residents and businesses of Seaside Park than with the Township's mainland community.

B.

On September 22, 2014, plaintiffs Donald Whiteman, Patricia A. Dolobacs, Judith A. Erdman, and 282 other residents of South Seaside Park, representing approximately sixty-six percent of the 435 registered voters in South Seaside Park, submitted to the Township Council a petition "seeking annexation by Seaside Park Borough and deannexation from Berkeley Township." The Council referred the petition to the Planning Board.

Beginning on January 15, 2015, and ending on February 7, 2019, the Planning Board conducted thirty-eight hearings. Before the Board, plaintiffs and the Township presented the testimony of expert witnesses, the testimony of fact witnesses, and exhibits.

The Planning Board retained a professional planner to assist it in the hearings and write the report required by N.J.S.A. 40A:7-12. As the Board's planner explained in his report, "a Board's role in the deannexation context is to function as an independent information-gatherer, fact-finder and advisor" to the municipality's governing body. Indeed, the planner acknowledged that his

6

role as the Board's professional planner was not to "prejudge the matter," but to "avoid the appearance of impropriety and bias."

Nonetheless, the Planning Board's planner actively assisted the Township in the presentation of its case before the Board. For example, the planner annotated hearing transcripts, commenting on the testimony of plaintiffs' witnesses with what he characterized as "suggestions that would clarify the record," and sent the annotations to the Township's witnesses. The planner conceded during his testimony that he "coordinated with the Township witnesses" and assisted them with respect to "what they needed to testify for."

The record suggests that when the planner assisted the Township's witnesses, he acted at the Township's behest. During the hearings, the Township's administrator e-mailed the Board's planner, Board members, and other officials, asking them to "create a strategy for the [Township] portion of the hearing, including but not limited to, material items to refute from applicant testimony, documentation required, priority of testimony/witnesses for the [Township]." The Board's planner conceded that the e-mail "probably" showed bias in the Township's favor.

According to testimony elicited at the hearings, one Council member who was also a Planning Board member publicly opposed plaintiffs' petition while the matter was pending, telling a group of senior citizens that they

should "start going to the meetings, because if South Seaside Park becomes Seaside Park, your taxes are going to go up."  In response to plaintiffs' objection to that official's continued participation in the Board's review of their petition, the official explained that he had simply urged members of the public to attend a meeting on a matter of public interest but had not made up his mind about the merits of plaintiffs' petition.  Another Board member allegedly disparaged  plaintiffs' deannexation effort as "an elitist section moving."

During the hearings, plaintiffs presented the expert opinion of a professional planner, who testified that the Township had provided deficient services to South Seaside Park residents and had otherwise disregarded their needs.  The planner opined that the Township's approval of the proposed deannexation would benefit the majority of South Seaside Park residents; that the Township's refusal to allow deannexation would be detrimental to the economic and social well-being of a majority of South Seaside Park residents; that deannexation would not cause a significant injury to the economic and social well-being of the Township; and that deannexation would not have a detrimental negative impact on the Township's master plan, zone plan, affordable housing plan, or 2020 Vision Statement.

Plaintiffs' accounting and financial expert witness opined that South Seaside Park's properties were responsible for 10.68 percent of the Township's net valuation of taxable properties and that the Township would lose $3,318,173 of its tax levy if South Seaside Park's petition for deannexation were to be approved. The expert explained, however, that in the event that South Seaside Park were to be deannexed from the Township, the loss of that portion of the tax levy would be offset, in part or in whole, by the Township's savings on police services to South Seaside Park.

The Township's expert witness on planning disputed plaintiffs' contention that the Township would suffer no harm if South Seaside Park were deannexed given the potential loss of property tax revenues paid by the owners of many housing units and oceanfront property. The Township's Chief Financial Officer and Treasurer stated that any savings by the Township on police services would be insignificant because the police officers who patrol South Seaside Park would not be terminated, but instead would be reassigned to other sections of the Township if South Seaside Park were to deannex from the Township. He opined that deannexation would reduce the Township's assessed valuation by $575,639,441 for tax year 2017 and would give rise to a tax increase of $147.63 for the average single-family home in the Township.

In rebuttal, plaintiffs presented the testimony of a second professional planner, who testified that deannexation of South Seaside Park would not harm the Township, but that South Seaside Park's residents would be harmed if deannexation were denied.

On August 6, 2020, the Planning Board issued its report, prepared by its professional planner and professional engineer. The Board found that "while [plaintiffs] may experience inconvenience and frustration in being part of Berkeley Township, they do not suffer the kind of long term, structural and inherently irremediable detriment that the Legislature had in mind" when it adopted the deannexation statute. The report stated that "[c]onversely, deannexation will work a long term, structural and inherently irremediable detriment to the remaining residents of Berkeley Township."

The same day, the Board adopted a resolution recommending that for the reasons stated in the report, the Township should deny the petition. By resolution dated September 21, 2020, the Township Council denied the petition, "relying on the well-supported findings" stated by the Planning Board in its resolution.

## C.

Plaintiffs filed a complaint in lieu of prerogative writs in the Law Division, contending that they had presented evidence sufficient to meet their

10

burden as to each of N.J.S.A. 40A:7-12.1's three factors. They also asserted due process claims pursuant to Article I, Paragraph 18 of the New Jersey Constitution.

After conducting a two-day hearing in which counsel for the parties presented arguments based on the record presented to the Planning Board, the trial court held that plaintiffs had met their burden of proof with respect to the statutory factors. The court recognized the presumption that a governing body's actions are correct given its members' knowledge of local conditions and New Jersey's public policy to recognize existing municipal boundaries. It found, however, that plaintiffs had presented sufficient evidence to meet their burden under N.J.S.A. 40A:7-12.1.

First, the trial court held that plaintiffs had proven that the Planning Board's review of the deannexation petition was not impartial but biased and that the Township's decision was therefore "arbitrary or unreasonable" under N.J.S.A. 40A:7-12.1. The court cited, among other considerations, the efforts of the Board's planner to assist the Township in the Board hearing and public statements by Board members against the deannexation petition. The trial court viewed the record to demonstrate that the Township's rejection of the petition was "predetermined." It held that by "lobbying and advocating against deannexation before and during hearings before the Board as well as

11

within the community, the Board failed to function in its role as a disinterested, fair and impartial decisionmaker" with respect to the petition.

Second, the trial court concluded that plaintiffs met their burden to establish that the Township's rejection of their petition would be detrimental to the economic and social well-being of a majority of South Seaside Park's residents. Ibid. Citing South Seaside Park's "geographic isolation" from the Township's mainland and its lack of a "social or community identification with the balance of the Township," the court concluded that South Seaside Park's residents would be better integrated into the adjoining municipality of Seaside Park.

Third, the trial court found that plaintiffs met their burden to prove that "annexation will not cause a significant injury to the well-being" of the Township. Addressing potential economic injury to the Township due to deannexation, the court found that although the average taxpayer would experience a municipal tax increase of approximately $200 per year, there would be no significant increase in the school tax because the municipalities at issue share a school district. The court further found that any loss of tax revenue would be offset by savings to the Township, relieved of the obligation to provide municipally funded services to South Seaside Park.

12

Turning to the question of whether the deannexation of South Seaside Park would inflict social injury on the Township, the trial court concluded that deannexation would have "little if any impact upon demographics, ethnic diversity or neighborhood prestige" in the remainder of the Township, and that the loss of White Sands Beach would reduce the Township's twenty-eight miles of shoreline by only 5.4 percent. The court found that deannexation would have an "insubstantial" impact on the social, cultural, civic, and community life of the Township.

The trial court entered final judgment in plaintiffs' favor. It ordered that its "approval for deannexation should be considered self-executing" and its relief "should be immediate," but stayed its judgment pending appeal.

D.

Defendants appealed the trial court's judgment. In an unpublished opinion, the Appellate Division found the trial court's findings of fact on all three prongs of N.J.S.A. 40A:7-12.1 to be supported by credible evidence in the record and agreed with the trial court's legal conclusions.

Addressing the first prong of N.J.S.A. 40A:7-12.1, the appellate court found that the Board's proceedings "were fraught with unfair and biased conduct" due to collusion between the Board and the Council, biased conduct

13

on the part of Board and Council members, and the Board's "pre-determined result of denying deannexation."

With respect to the second prong, the Appellate Division agreed with the trial court that because of South Seaside Park's geographic separation and social isolation from the Township's mainland, the denial of plaintiffs' petition would be detrimental to the economic and social well-being of a majority of South Seaside Park's residents.

As to the third prong, the Appellate Division concurred with the trial court that the loss of tax revenue that the Township would sustain by virtue of South Seaside Park's deannexation would be reduced or eliminated by cost savings, and that mainland residents of the Township would suffer no social detriment, given their limited interaction with South Seaside Park's residents and minimal use of White Sands Beach.

The Appellate Division accordingly affirmed the trial court's judgment.

### E.

We granted defendants' petition for certification and ordered that this appeal proceed on an expedited schedule. 260 N.J. 125 (2025).

### II.

Defendants urge the Court to reverse the Appellate Division's judgment. They argue that the trial court and Appellate Division misapplied N.J.S.A.

14

40A:7-12.1's "arbitrary or unreasonable" first prong, imposing on the Planning Board strict neutrality requirements that the Legislature did not prescribe. Defendants also contest both courts' findings on the statute's third prong, contending that deannexation of South Seaside Park would not only increase remaining residents' municipal taxes, but would trigger an increase of those residents' school taxes that would not be offset by cost savings. Defendants assert that if the Court rules in plaintiffs' favor, it should exclude White Sands Beach from the area subject to deannexation.

Plaintiffs argue that the trial court and Appellate Division properly found that they met their burden of proof under N.J.S.A. 40A:7-12.1. With respect to the statute's first prong, plaintiffs contend that although the objective Planning Board determination that both courts envisioned is not addressed in detail in the statute, it is consistent with the approach taken in prior deannexation proceedings and would not bar a municipality in the Township's position from presenting expert testimony or other evidence. Plaintiffs assert that their proofs as to N.J.S.A. 40A:7-12.1's second prong are uniquely compelling given the distance between South Seaside Park and the mainland, and that the trial court and Appellate Division properly applied the statute's third prong to find that the Township would not sustain significant damage due to the loss of South Seaside Park. They state that because White

15

Sands Beach was designated in their petition as part of the land in dispute, it is subject to deannexation.

III.

A.

When we review a trial court's determination, we will "not disturb the factual findings and legal conclusions of the trial judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (internal quotation marks omitted) (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015)).

We review questions of statutory interpretation de novo without deference to the trial court's findings. In re Est. of Jones, 259 N.J. 584, 594-95 (2025). In that review, we apply familiar principles of statutory interpretation. "When interpreting a statute, the Legislature's intent is paramount to a court's analysis, and the plain language of the statute is crucial to determining legislative intent." Id. at 595. We "resort[] to extrinsic evidence only when 'there is ambiguity in the statutory language that leads to more than one plausible interpretation.'" Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

16

B.

1.

Enacted in 1917, the original version of New Jersey's deannexation statute required that a petition for annexation be accompanied by "a resolution of the governing body of the municipality in which such land is located, consenting to said annexation, which resolution said governing body is hereby authorized and empowered to adopt." N.J.S.A. 40:43-26 (repealed 1979). The 1917 Act did not address the procedure to be followed in the event that a municipality opposed an attempt to deannex. Ibid.

This Court construed the 1917 Act to impose the burden of proof on the municipality opposing a petition for deannexation. W. Point Island Civic Ass'n v. Twp. Comm. of Dover, 54 N.J. 339, 348 (1969). It held that if the municipality "is to object to the deannexation," it "must come forward with reasons why such deannexation would be injurious to the social and economic well-being of the municipality." Ibid.; see also Carton v. Tinton Falls, 177 N.J. Super. 404, 410 (App. Div. 1981) (holding that the 1917 Act did not require petitioners to "give reasons to the municipal officials in requesting consent to deannexation" and that, "[o]nce the request is made, it is up to the municipality, if it objects, to come forward with reasons why it refuses to grant consent").

17

In Ryan v. Mayor & Council of Demarest, the Court observed that deannexation petitioners have limited information about the potential impact of deannexation on their municipality. 64 N.J. 593, 605 (1974). It held that if petitioners prove they submitted a petition and the municipality withheld its consent, it is the municipality's burden to present evidence to which it has "a superior means of access." Ibid. The Court identified the categories of proof that would satisfy the municipality's burden:

> Proof of either economic or social injury, substantial in nature, is sufficient to satisfy the municipality's burden of coming forward with the evidence and there need not be a showing of both. It is likewise conceivable that there be both economic and social detriment, neither of which standing alone would be considered "substantial" but the total of which taken together would work a substantial injury on the community were deannexation allowed.
>
> [Id. at 601-02.]

Addressing an issue left unresolved in West Point Island, the Court in Ryan interpreted the 1917 Act to place on the petitioners "the ultimate burden of proving that the municipality acted in an arbitrary or unreasonable manner." Id. at 602.

In 1979, the Legislature repealed the 1917 Act and recodified it from Title 40 to 40A. L. 1979, c. 181, § 2 (eff. Aug. 29, 1979). Three years later, the Legislature adopted the statute that governs this appeal. L. 1982, c. 182,

18

§§ 1, 2. It acted to "establish certain procedures to be followed by the governing body of a municipality before adopting a resolution on a petition requesting annexation of land to another municipality." Sponsor's Statement to A. 398 (L. 1982, c. 182, § 2).

As amended in 1982, N.J.S.A. 40A:7-12 prescribes the requirements for a deannexation petition and addresses the procedure to be followed when the municipality consents. It provides that

> a petition in writing shall be presented to the governing body of the municipality to which such annexation is sought to be made, specifically setting forth the boundaries of such land, signed by at least 60% of the legal voters residing thereon. If the land is vacant, the petition may be signed by the person or persons owning at least 60% of said land as shown by the assessor's duplicate for the preceding year. The petition shall be duly verified by one of the signers, and shall have attached thereto the oath of an assessor of the municipality in which said land is located, or of some other person having access to the assessor's books, setting forth the assessed value of the real estate contained within the boundaries for the preceding year, and the amount of real estate assessed to any of the persons whose names are signed to such petition. The petition shall also have attached thereto a certified copy of a resolution adopted by two-thirds of the full membership of the governing body of the municipality in which said land is located, consenting to said annexation.
>
> Prior to action on a resolution to consent to or to deny the petition for annexation, the governing body of the municipality in which the land is located shall, within 14 days of the receipt of the petition, refer the petition

19

to its planning board which shall, within 45 days of its receipt, report to the governing body on the impact of the annexation upon the municipality. Action on a resolution to consent to or deny the annexation shall be taken within 30 days of receipt of the planning board's report.

[N.J.S.A. 40A:7-12.]

In its 1982 amendments, the Legislature enacted a new provision, N.J.S.A. 40A:7-12.1, "to stipulate that in any judicial review of a refusal by the governing body to consent to a petition of annexation, the petitioner shall have the burden of proof to establish that the denial was arbitrary or unreasonable." Sponsor's Statement to A. 398 (L. 1982, c. 182, § 2). The Legislature stated that the provision "is intended to avoid the burdensome legal costs a municipality might incur if the burden of proof were upon the municipality." Ibid.

N.J.S.A. 40A:7-12.1 provides that

> [i]n any judicial review of the refusal of the governing body of the municipality in which the land is located or the governing body of the municipality to which annexation is sought to consent to the annexation, the petitioners have the burden of establishing that the refusal to consent to the petition was arbitrary or unreasonable, that refusal to consent to the annexation is detrimental to the economic and social well-being of a majority of the residents of the affected land, and that the annexation will not cause a significant injury to the well-being of the municipality in which the land is located.

The 1982 amendments "signified a legislative intent to 'impose[] a heavier burden on the petitioners, thereby making deannexation more difficult or, perhaps, discouraging attempts to undertake the effort at all.'" Seaview Harbor Realignment Comm., LLC v. Twp. Comm. of Egg Harbor Twp., 470 N.J. Super. 71, 95 (App. Div. 2021) (alteration in original) (quoting Avalon Manor Improvement Ass'n v. Township of Middle, 370 N.J. Super. 73, 91 (App. Div. 2004)). As the Appellate Division has explained, in cases decided "[b]oth before and after the 1982 amendment, courts have" construed the 1982 deannexation statute to convey "an intention 'to give precedence to a more significant policy, that of preservation of municipal boundaries and maintenance of their integrity against challenge prompted by short-term or even frivolous considerations such as "tax shopping" or avoidance of assessments.'" Id. at 95 (quoting D'Anastasio Corp. v. Township of Pilesgrove, 387 N.J. Super. 247, 260 (Law Div. 2005)); accord Ryan, 64 N.J. at 606.

2.

Case law explains each of N.J.S.A. 40A:7-12.1's three prongs. The first prong, requiring the petitioners to prove "that the refusal to consent to the petition was arbitrary or unreasonable," mirrors the standard governing appellate review of municipal actions; as the court noted in Russell v. Stafford

21

Township, N.J.S.A. 40A:7-12.1 embodies "traditional concepts of reasonableness" that have long applied to judicial review of municipal actions in deannexation matters. 261 N.J. Super. 43, 60 (Law Div. 1992); see also Ryan, 64 N.J. at 600-01 (noting, before the enactment of N.J.S.A. 40A:7-12.1, that a municipality's exercise of discretionary authority in a deannexation matter is "subject to close judicial scrutiny to prevent arbitrary and unreasonable action"). In addition, courts reviewing the actions of municipal zoning and planning boards must ensure that the boards acted "within their jurisdiction and 'according to law.'" Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 58 (1998) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 522 (1993)). This includes ensuring that the common law guarantee of a "fair and impartial tribunal" is upheld. Ibid.

In this appeal, the trial court and Appellate Division premised their findings of arbitrary and unreasonable action by the Township on allegations of bias. In its prior deannexation decisions, West Point Island and Ryan, the Court did not consider an allegation of bias in the proceedings. The Appellate Division, however, has twice rejected claims premised on allegations of bias under the first prong of N.J.S.A. 40A:7-12.1.

In Avalon Manor, the plaintiff, an association of residents of a barrier island, sought deannexation from Middle Township. 370 N.J. Super. at 76-77.

22

The petitioners cited "a comment by the mayor at a Township meeting" that "he would 'never cut [land] off and give it to Avalon'" as evidence that the mayor was biased against Avalon Manor's attempt to deannex. Id. at 99. Affirming the trial court's dismissal of the petitioners' complaint, the Appellate Division found the mayor's comment "isolated and inconsequential in the context of this comprehensive process." Ibid.

In Seaview Harbor, residents of a section of Egg Harbor Township sought deannexation from the Township and annexation to a neighboring municipality. 470 N.J. Super. at 76-77. The trial court found that they did not meet their burden on the first and third factors set forth in N.J.S.A. 40A:7-12.1 and dismissed their complaint. Id. at 77-78.

On appeal, the petitioners claimed that three officials who were members of both the Township Committee and the Planning Board "had predetermined that they would oppose the petition and influenced other members to do the same, rendering the final decision arbitrary, capricious, and unreasonable." Id. at 78. The Appellate Division rejected that allegation on the grounds that all three officials had recused themselves from the deannexation proceeding and there was "no evidence that they attempted to influence others in opposing the petition, that [they] had a personal stake in the matter, or that the proceedings were tainted by bias." Id. at 105. It accordingly affirmed the trial court's

23

holding that the petitioners "received a full and fair opportunity to present their case," and did not meet their burden on the statute's first prong. Id. at 104-06.

N.J.S.A. 40A:7-12.1's second prong requires proof that the municipality's refusal to consent to the deannexation petition "is detrimental to the economic and social well-being of a majority of the residents of the affected land." The statute does not require deannexation petitioners "to show a benefit to the majority" if deannexation is allowed, "but rather that the refusal to consent is detrimental to the economic and social well-being of the majority." D'Anastasio Corp., 387 N.J. Super. at 254; see also Seaview Harbor, 470 N.J. Super. at 96 ("Notably, economic benefit to a petitioner does not necessarily equate to economic detriment if the petition is denied."). As the Appellate Division explained,

> relevant considerations include, but are not limited to: the geographic location of the area seeking deannexation and its physical connection, or lack thereof, to the municipality; the petitioner's connection with both municipalities based on social interactions, emergency services and location; demographics; services provided by the municipalities; the petitioner's identity and sense of belonging; and the economic effect of deannexation in terms of taxes or any other financial consequence such as insurance premiums and construction costs or profits.
>
> [Seaview Harbor, 470 N.J. Super. at 95-96.]

24

The court added that those "considerations should not be limited to the date of the petition but should extend into the future and consider the 'prospect for and likelihood of change.'" Id. at 96 (quoting Avalon Manor, 370 N.J. Super. at 102).

The distance between the land subject to deannexation and the municipality the petitioners seek to leave, as compared with that land's distance from the municipality the petitioners seek to join, may be a pivotal consideration. In West Point Island, the residents, living far from the remainder of the municipality they sought to leave, "naturally look[ed]" to the nearby municipality they sought to join "as the focus of community interest and activity." 54 N.J. at 350.

In Seaview Harbor, the petitioners' section of the municipality was "4.3 miles east of the mainland portion," separated from the mainland "by marshland and multiple municipalities." 470 N.J. Super. at 79. Although the Appellate Division rejected the deannexation petition for other reasons, it noted the trial court's finding of "social harm" to the residents under N.J.S.A. 40A:7-12.1's second prong "based on residents' identity, choice of schools, and community activities." Id. at 103-04.

In the contrasting setting of Ryan, however, the Court observed that "[t]he geography and logistics of the situation do not compel the conclusion

25

that the land in question more naturally belongs to the municipality to which deannexation is sought."  64 N.J. at 603.

N.J.S.A. 40A:7-12.1's third prong requires proof that the annexation "will not cause a significant injury to the well-being of the municipality in which the land is located."  Departing from the language of the 1917 Act, "the Legislature appears to have reversed the burden of proof as to the third element," so that deannexation petitioners must show that deannexation "will not cause a significant injury to the well-being of the deannexing municipality rather than the initial burden being upon the deannexing municipality to prove that it will be injured."  Russell, 261 N.J. Super. at 49.

As the Appellate Division observed in Seaview Harbor, the "injury" contemplated by the Legislature "can include the loss of significant services to the community at large, removal of a diverse citizenship, and likely erosion of valuable civic participation caused by the absence of those homeowners who seek to deannex from the community."  470 N.J. Super. at 78.

The impact of deannexation on a municipality's tax base is a relevant consideration under N.J.S.A. 40A:7-12.1's third prong.  In Ryan, this Court noted that the municipal officials in that case "quite properly considered the amount of both the long term and the short term loss of revenue in determining that the proposed deannexation would mean economic injury to the Borough."

26

64 N.J. at 603; accord D'Anastasio Corp., 387 N.J. Super. at 258; Avalon Manor, 370 N.J. Super. at 102.

The impact of such a loss of revenue should be weighed against cost savings that would be achieved by deannexation. Seaview Harbor, 470 N.J. Super. at 87, 93; Avalon Manor, 370 N.J. Super. at 98. Such savings can be premised on municipal services that would no longer be necessary if deannexation occurs. Ryan, 64 N.J. at 602; Avalon Manor, 370 N.J. Super. at 98. As the Appellate Division explained in Avalon Manor, however, cost savings should not be based on measures that a municipality could take that are available "whether deannexation occurs or not," such as "the sale of municipally owned property, the issuance of a liquor license and other such devices." 370 N.J. Super. at 98.

The Appellate Division's decision in Seaview Harbor illustrates the application of N.J.S.A. 40A:7-12.1's third prong. 470 N.J. Super. at 92-93. There, the trial court found that deannexation would cost the municipality $2,325,000 in tax revenue, thus increasing the average homeowner's annual tax bill by $122.78. Id. at 92. The Appellate Division concurred with the trial court that the municipality was "in a state of economic stress as a result of state mandates, the state's failure to adequately fund programs, the economic recession, reductions in property values and the casino crisis in Atlantic City."

27

Id. at 92-93 (internal quotation marks omitted). The appellate court further noted that because of the municipality's cost-sharing agreement with the town the petitioners sought to join, deannexation would yield "no quantifiable savings" for emergency services. Id. at 93. The court also recognized the social harm that deannexation would cause, because the residents seeking deannexation "had been more actively involved in [the municipality's] planning and government than any other group." Id. at 83.

The Appellate Division therefore affirmed the trial court's finding that the petitioners "failed to meet their burden of showing that deannexation would not cause significant injury to the well-being" of the municipality they sought to leave. Id. at 92-93.

3.

If a court reviewing a municipality's denial of deannexation determines that the petitioners have met their burden of proof as to all three prongs of N.J.S.A. 40A:7-12.1's statutory test, it orders the municipality to grant deannexation in accordance with N.J.S.A. 40A:7-12. At that stage, the petitioners may request that the municipality they seek to join "annex the land specifically described in the petition" in accordance with N.J.S.A. 40A:7-13 and -14.

28

C.

Against that backdrop, we review the determinations of the trial court and Appellate Division as to each prong of N.J.S.A. 40A:7-12.1's deannexation standard.

1.

The trial court and Appellate Division found evidence of bias in the Planning Board's proceedings and held that plaintiffs accordingly met their burden to prove that the Council's denial of their deannexation petition was "arbitrary or unreasonable" under N.J.S.A. 40A:7-12.1. We agree.

As the deannexation statute's plain language reveals, the Legislature determined that two separate municipal bodies -- the governing body of the municipality and the planning board -- participate in the deannexation process. N.J.S.A. 40A:7-12. Their respective roles are distinct from one another. The municipality is a party before the planning board and may present fact and expert evidence relevant to the question of deannexation; the planning board develops a factual record, considers the evidence presented by the parties, and submits a report to the governing body assessing "the impact of the annexation upon the municipality." Ibid.

In any proceeding before it, the Planning Board must conduct itself fairly and impartially. See Wyzykowski, 132 N.J. at 522 (the common law

29

entitles the parties before a municipal zoning or planning board to "a fair and impartial tribunal"). Even the professional planner retained by the Planning Board in this case acknowledged that a board reviewing a deannexation petition must act in an open-minded and unbiased manner, conducting the proceedings fairly and objectively assessing the evidence in its report to the governing body.

Here, the Planning Board did not act in accordance with that standard. As the trial court and Appellate Division found, the Board's planner coordinated the litigation on the Township's behalf, annotating transcripts, suggesting themes for the Township's rebuttal of plaintiffs' evidence, and helping Township witnesses prepare for their testimony. We concur with the Appellate Division that the planner's conduct "was tantamount to a court-appointed expert participating in strategy sessions and witness preparation meetings for a party appearing before a court, thereby shaping the record that was developed and attempting to skew it in favor of one of the parties." By virtue of that conduct, plaintiffs were denied a fair and impartial hearing on their petition. In contrast to the alleged bias in Seaview Harbor, 470 N.J. Super. at 105, and Avalon Manor, 370 N.J. Super. at 98-99, the alleged bias in this matter was not isolated or inconsequential but substantially impacted the fairness of the proceedings.

30

That conclusion is underscored by the evidence that Planning Board members made public comments opposing the deannexation petition while that petition was under the Board's review. In contrast to the public officials alleged to have made negative comments about the petition in Seaview Harbor, 470 N.J. Super. at 105, the officials in this matter did not recuse themselves from the proceedings.

We hold that the trial court's factual findings regarding the first prong of N.J.S.A. 40A:7-12.1 were supported by "competent, relevant and reasonably credible evidence" in the record, see Allstate Ins. Co., 228 N.J. at 619, and that the trial court and Appellate Division properly concluded that plaintiffs met their burden with respect to that factor in the statutory test.

2.

In its petition for certification, the Township does not appear to contest the findings of the trial court and the Appellate Division that the denial of plaintiffs' petition would be "detrimental to the economic and social well-being" of a majority of South Seaside Park's residents. See N.J.S.A. 40A:7-12.1.[2] Both courts' findings on the statute's second prong are substantially premised on the most compelling factors in plaintiffs' favor: the geographic

_____

[2] The Township clarified at oral argument that it does not concede the second prong of N.J.S.A. 40A:7-12.1, but that its focus is the statute's third prong.

31

distance between South Seaside Park and the Township's mainland section and the time and effort required for residents to traverse seven municipalities and reach the mainland, where virtually all municipal facilities are located.

The trial court found that the distance between South Seaside Park and the remainder of the land in the Township has given rise to geographic isolation and limited South Seaside Park residents' connection to the Township's social and community life. See W. Point Island, 54 N.J. at 349-50 (relying on the petitioners' geographic and social isolation from the distant municipality to rule in favor of deannexation). The court found that the deannexation petition was primarily motivated by the residents' view that the Township has declined to invest in their distant community, and their belief that they would be part of the community in the adjacent municipality of Seaside Park.

We agree with the Appellate Division that the trial court's findings on this issue are based on substantial evidence in the record, including fact and expert testimony on the social and economic detriment to South Seaside Park residents if they were denied the opportunity to annex their land to Seaside Park. We concur with the trial court and Appellate Division that plaintiffs met their burden with respect to N.J.S.A. 40A:7-12.1's second prong.

32

3.

Finally, we address N.J.S.A. 40A:7-12.1's third prong, which requires plaintiffs to prove that deannexation "will not cause a significant injury to the well-being of the municipality."

There is no question that the Township would suffer an economic loss were it to lose the tax revenue generated by South Seaside Park's residents; as the trial court found, the owner of an average Township home "would incur an annual increase of around $200" in municipal taxes.[3] The evidence presented to the Board supports the conclusion that any economic loss to the Township would be offset to some degree by cost savings. The evidence indicates that the Township would no longer need the two police vehicles used to serve South Seaside Park, that it could eliminate certain summer auxiliary officer positions, and that there would be reduced demand for other municipal services.

---

[3] The Township alleges that deannexation would increase the school tax burden for remaining taxpayers by approximately $121 per year, and asserts that the Appellate Division erroneously failed to address the potential increase in the school tax rate. However, a school tax increase was not mentioned in the Township's resolution as a reason for denying the deannexation petition, and the trial court found that "[t]here would be no impact upon school taxes" owed by the Township's remaining residents as a result of deannexation. The Township did not dispute that finding in its appeal to the Appellate Division, and the Appellate Division therefore did not rule on the issue. Accordingly, we do not address the impact of deannexation on the school tax.

33

The trial court's finding that deannexation would not cause substantial economic harm to the Township is supported by competent, relevant, and reasonably credible evidence in the record.

The record also supports the trial court's finding that the deannexation of South Seaside Park would not cause significant social harm to the Township's remaining residents, given the limited contact between South Seaside Park residents and their counterparts in the Township's mainland section. In that regard, this case stands in stark contrast to Seaview Harbor, in which the residents seeking deannexation were found to have a higher level of civic involvement in the municipality than other residents. See 470 N.J. Super. at 83. The trial court also found that the loss of White Sands Beach, which represents only 5.4 percent of the Township's twenty-eight miles of shoreline, would have a minimal impact on the Township.[4]

---

[4] Nothing in the deannexation statute or the record supports defendants' argument, asserted for the first time before this Court, that any order of deannexation should exclude White Sands Beach. In their petition, plaintiffs identified White Sands Beach as part of the area they seek to deannex from the Township and annex to Seaside Park. See N.J.S.A. 40A:7-13 (authorizing petitioners to request that the municipality they seek to join "annex the land specifically described in the petition"). White Sands Beach was considered part of the land in dispute in the proceedings before the Planning Board, the Council, the trial court, and the Appellate Division, and is therefore part of the land subject to deannexation in this appeal.

We agree with the trial court and the Appellate Division that plaintiffs proved that the proposed deannexation would not cause a significant injury to the Township's well-being.

We hold that plaintiffs have satisfied their burden of proof as to all three prongs of N.J.S.A. 40A:7-12.1 and that the trial court properly granted plaintiffs' petition for deannexation. Pursuant to N.J.S.A. 40A:7-13, plaintiffs may request that Seaside Park annex the land identified in plaintiffs' petition for deannexation.

## IV.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.